UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SUZETTE DIMASCIO, an individual,
CREATIVE SOLUTIONS INVESTMENT
GROUP, LLC, a Florida Limited Liability
Company, and CAREER SOLUTIONS
INTERNATIONAL, INC., a Florida
Corporation

        Plaintiffs,

    v.                                       Case No. _____

INTALERE, INC., a Delaware Corporation,
and CSI SPECIALTY GROUP, LLC, a
Delaware Limited Liability Company

        Defendants.
_____/

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW Plaintiffs Suzette DiMascio, Creative Solutions Investment Group, LLC, and

Career Solutions International, Inc. (collectively "Plaintiffs") and file this Plaintiffs' Complaint and

Demand for Jury Trial ("Complaint") against Defendants Intalere, Inc. and CSI Specialty Group, LLC

(collectively "Defendants"), and in support thereof would respectfully show the Court as follows:

## PARTIES

1.      Plaintiff Suzette DiMascio ("DiMascio") is a citizen of the State of Florida residing

in Gibsonton, Florida 32779.  DiMascio is the registered agent and manager of Creative Solutions

Investment Group, LLC, a former employee of Defendant Intalere, Inc., and the former President

of CSI Specialty Group, LLC, a wholly owned subsidiary of Intalere, Inc.

2.      Plaintiff Creative Solutions Investment Group, LLC ("Creative Solutions") is a Florida limited liability company with its principal place of business in Gibsonton, Florida.

3.      Plaintiff Career Solutions International, Inc. d/b/a CSI Specialty Group ("Career Solutions") is a Florida corporation with its principal place of business in Gibsonton, Florida.

4.      Defendant Intalere, Inc. ("Intalere") is a Delaware corporation with its principal place of business in St. Louis, Missouri.  Intalere is a wholly owned subsidiary of Intermountain Health Care, Inc.  However, upon information and belief, Vizient, Inc. is in the process of acquiring Intalere and may need to be added to this action as a party defendant.

5.      Defendant CSI Specialty Group, LLC ("CSI") is a Delaware limited liability company and is a wholly owned subsidiary of Intalere, Inc. CSI's high-level corporate officers are located in St. Louis, Missouri making St. Louis, Missouri its principal place of business.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this district pursuant to 28 U.S.C. §1332.  Plaintiffs are citizens of the State of Florida.  Defendant Intalere, Inc. is a citizen of Delaware and Missouri, and Defendant CSI Specialty Group, LLC is a citizen of Delaware and Missouri.  The amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

7.      Venue is proper in this district under 28 U.S.C. §1391 (b) and (c) based on the following:

    (a)     A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the State of Florida; and

    (b)     During the relevant time period, Defendants conducted, engaged in, and carried on business within the State of Florida.

2

## FACTUAL BACKGROUND

**I.      Sale of Career Solutions to Intalere**

8.      On October 8, 2002, DiMascio incorporated Career Solutions International, Inc. d/b/a CSI Specialty Group, a specialty pharmacy consulting, workplace, planning, and talent acquisition firm, in the State of Florida.  Under DiMascio's lead, Career Solutions provided organizations such as pharmacies, drug manufacturers, and health systems, strategic and financial planning services for specialty pharmacy build-outs, manufacturer drug launches, asset valuations, and payor and benefit strategy.  DiMascio served as the President and CEO of Career Solutions for 15 years prior to the asset sale to Intalere.  CSI Specialty Group's offices were originally located at 315 Mangoustine Drive, Sanford, Florida 32771, in a building owned by Creative Solutions.

9.      Intalere is a group-purchasing organization that connects businesses with manufacturers, distributors, and vendors.  Intalere provides various services to healthcare providers, including managing non-labor spending, providing new technologies, products, and services, and providing data analytics.

10.      On or about January 2, 2018, DiMascio sold substantially all of the assets of Career Solutions to Intalere, pursuant to an Asset Purchase Agreement (the "APA") entered into between Career Solutions, DiMascio, as the holder of all the outstanding equity interests of Career Solutions, and CSI Specialty Group, LLC, a wholly owned subsidiary of Intalere.  Prior to the sale, on November 21, 2017, Intalere created CSI in the State of Delaware to assume the assets purchased from Career Solutions.  CSI is a wholly owned subsidiary of Intalere, and its decisions stem from the decision-makers of Intalere.

3

11.     CSI did not acquire Career Solutions as part of the sale.  However, Career Solutions forfeited use of the assumed name CSI Specialty Group as part of the transaction.

12.     In exchange for its purchase of substantially all of the assets of Career Solutions, Intalere agreed to pay DiMascio $3,500,000.00, plus an Earn-Out Payment due in four (4) annual installments between 2018 and 2021 ("Earn-Out Payment").  Each installment of the Earn-Out Payment is calculated based on a percentage of the revenue growth of CSI during the applicable calendar year.  The percentage varied depending on the year.  The 2019 Earn-Out Payment was calculated as 26% of the revenue growth of CSI between January 1 and December 31, 2019.

13.     As part of the purchase, CSI executed a Promissory Note in the principle sum of $1,500,000.00 in favor of Career Solutions. A true and correct copy of the Promissory Note (the "Note") is attached hereto as **Exhibit 1** and incorporated herein by reference.  The Note is payable in twenty-four (24) equal monthly installments between March 1, 2018 and February 1, 2020.

14.     The Note defines default to include CSI's failure to make (i) any installment payment due under the Note or (ii) any Earn-Out Payment due under the APA, which continues for five (5) business days following written notice. See Exhibit 1, Paragraphs 6 & 7.

15.     As part of the sale, DiMascio and Intalere specifically negotiated a four-year Employment Agreement, pursuant to which Intalere agreed to employ DiMascio as President of CSI.  A true and correct copy of the Employment Agreement is attached hereto as **Exhibit 2** and incorporated herein by reference.

16.     Section 7(c) of the Employment Agreement permits DiMascio to resign her employment with Intalere for Good Reason, including "a significant reduction in [DiMascio's] authority or responsibility" which is not cured by Intalere within thirty (30) days of DiMascio's

BILLBROUGH & MARKS, P.A.

100 ALMERIA AVENUE · SUITE 320 · CORAL GABLES, FLORIDA 33134 · TELEPHONE 305.442.2701 · FAX 305.442.2801

preliminary notice of Good Reason.  In the event DiMascio resigned for Good Reason, Section 7(a) of the Employment Agreement requires Intalere to pay DiMascio's base salary through the remainder of the four-year employment term.

## II.    DiMascio's Employment with Intalere

17.    DiMascio began her employment with Intalere on January 2, 2018.  As President of CSI, DiMascio directly supervised 25 employees and reported to Julius Heil ("Heil"), the President and CEO of Intalere.  DiMascio and Intalere worked to grow CSI's operations during 2018, her first year of employment with Intalere.  On January 1, 2019, Intalere awarded DiMascio a raise.  In February 2019, Heil congratulated DiMascio on CSI's sixty-one percent (61%) organic growth rate in its first year with Intalere.

18.    On April 3, 2019, Heil informed DiMascio via email that, effective the following day, she would no longer serve as President of CSI or supervise any employees; Jim Wilson ("Wilson") would be the interim President of CSI.  In his email, Heil indicated DiMascio was to "get things done by interfacing with [Wilson] and allowing him to direct the efforts of the team." According to Heil, DiMascio's only responsibilities were ministerial—to attend conferences, sit on boards, and grow the value of CSI.  In his email to DiMascio, Heil said, "To be clear, you will have no direct reports until further notice."

19.    At no time did DiMascio consent to this change in her title or reduction in job duties.

20.    As President of CSI, Wilson worked from St. Louis, Missouri.  On April 8, 2019, Wilson sent an email to DiMascio indicating he would maintain the role of President of CSI for

5

the "foreseeable future."   On April 9, 2019, Wilson sent an email to all employees of CSI announcing his new role as the President of CSI.

21.     On April 10, 2019, DiMascio provided Heil a Preliminary Notice of Good Reason pursuant to Section 7(c) of the Employment Agreement, setting forth the circumstances constituting Good Reason to terminate the Employment Agreement, most notably Intalere's significant reduction of her job authority and responsibility.   DiMascio's April 10, 2019 Preliminary Notice of Good Reason (the "Preliminary Notice of Good Reason") is attached hereto as **Exhibit 3** and incorporated herein by reference.

22.     The Preliminary Notice of Good Reason also set forth the compensation Intalere owed DiMascio pursuant to the Employment Agreement in the event Intalere failed to cure the listed defects and DiMascio was forced to terminate the Employment Agreement for Good Reason: (1) payment of DiMascio's base salary through the remainder of the four-year employment term; (2) a pro-rated portion of the Earn-Out Payment for the 12-month period in which termination for Good Reason occurred; and (3) continued payments pursuant to the Promissory Note.

23.     Heil, on behalf of Intalere, responded to DiMascio's Preliminary Notice of Good Reason on April 12, 2019, claiming for the first time that Intalere was investigating reports that DiMascio engaged in "gross misconduct and multiple legal violations" and denying that Intalere reduced DiMascio's permanent job duties.

24.     Pursuant to Section 9(b) of the Employment Agreement, DiMascio and Heil met in person on April 25, 2019.  During the meeting, Heil alleged DiMascio violated Intalere's policies but refused to specify which policies or provide any factual basis for the alleged violations.

BILLBROUGH & MARKS, P.A.

100 ALMERIA AVENUE · SUITE 320 · CORAL GABLES, FLORIDA 33134 · TELEPHONE 305.442.2701 · FAX 305.442.2801

25.     On April 26, 2019, more than two weeks after Intalere's receipt of DiMascio's Preliminary Notice of Good Reason, Intalere presented DiMascio with a Performance Improvement Plan, the terms of which (a) accuse DiMascio of engaging in 'gross misconduct constituting workplace harassment, bullying, retaliation, and abuse treatment of [her] subordinates; (b) require DiMascio to agree to be "closely monitored" by Intalere for the following six months; (c) confirm that she would have no "day-to-day" people management responsibilities during her continued employment with Intalere;" (d) require her to work with an external coach; and (e) insist that she withdraw her April 10, 2019 Preliminary Notice of Good Reason for termination.  The Performance Improvement Plan also incorrectly states Intalere provided specific guidance and advice about DiMascio's alleged conduct, even though DiMascio had not received any such feedback.

26.     DiMascio offered to sign a revised version of the Performance Improvement Plan that did not require her to withdraw her Preliminary Notice of Good Reason.  Intalere refused to restore DiMascio's job title, reinstate DiMascio's managerial responsibilities, or revise the Performance Improvement Plan, as requested.  Instead, Intalere insisted that DiMascio sign the Performance Improvement Plan as originally presented.

27.     On May 10, 2019, DiMascio again notified Intalere that if it failed to restore her job title, authority, and responsibilities by the end of the day, her resignation for Good Reason would become effective May 11, 2019.  Intalere failed to respond, and DiMascio resigned from her position with Intalere for Good Reason, effective May 11, 2019.

BILLBROUGH & MARKS, P.A.

100 ALMERIA AVENUE · SUITE 320 · CORAL GABLES, FLORIDA  33134 · TELEPHONE 305.442.2701 · FAX 305.442.2801

### III.     Lease of CSI's Florida Commercial Space

28.     Creative Solutions, one of DiMascio's entities, owns the building located at 315 Mangoustine Drive, Sanford, Florida 32771 (the "Premises") at which CSI maintained its Florida office.  In conjunction with its purchase of Career Solutions, CSI executed a Florida Commercial Lease Agreement with Creative Solutions (the "Lease Agreement") on January 2, 2018.  A true and correct copy of the Lease Agreement is attached hereto as **Exhibit 4** and incorporated herein by reference.

29.     CSI leased the Premises from Creative Solutions for the period between January 2, 2018 and December 31, 2022.  The Lease Agreement permits CSI to sublet all or part of the Premises upon notification to Creative Solutions.  However, pursuant to Section 4, "[r]egardless of any assignment or sublease, [CSI] shall remain fully liable on this [Lease Agreement] and shall not be released from performing any of the term, agreements and conditions of the [Lease Agreement], unless otherwise agreed in writing."

30.     In addition, Section 6 of the Lease Agreement requires CSI to obtain Creative Solutions' consent to "remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the [Premises] . . . ."

31.     CSI's failure to perform, in whole or in part, any material obligation under the Lease Agreement is an event of default.  Upon default, Creative Solutions is permitted to: (1) terminate the Lease Agreement and take possession of the Premises; (2) declare the accelerated amount due by determining how much "the total Rental payable during the remainder of the applicable Term exceeds the reasonably estimated fair market value of the [Premises] for the remainder of such Term;" (3) enter and take possession of the Premises as the agent of CSI without

BILLBROUGH & MARKS, P.A.

100 ALMERIA AVENUE · SUITE 320 · CORAL GABLES, FLORIDA  33134 · TELEPHONE 305.442.2701 · FAX 305.442.2801

terminating the Lease Agreement or being liable for prosecution on any claim for damages; or (4) perform any obligations CSI has without being liable for prosecution or damages.

## IV.     Breach of Lease Agreement

32.     On or about August 19, 2020, CSI provided Creative Solutions notification of CSI's intent to sublease the Premises, effective September 1, 2020.  Creative Solutions, by and through its counsel, acknowledged CSI's intent to sublease the Premises and reminded CSI that it was not released from performing any of the terms, agreements, or conditions of the Lease Agreement and would remain fully liable under the Lease Agreement.

33.     In early September, the property manager for the Premises informed DiMascio that CSI's subtenant wanted to make alterations to the Premises.  By and through its counsel, Creative Solutions requested that CSI make a formal, written request for the desired alterations and provide all relevant details.  Creative Solutions reminded CSI that approval was required for alterations to the Premises.

34.     On October 7, 2020, CSI provided Creative Solutions with a drawing of the desired alterations.  Counsel for Creative Solutions responded on October 12, 2020, requesting an architect's rendering and blueprints/space usage; a letter from the City of Sanford, Florida confirming no permit was required for the proposed alterations; and details concerning the proposed flooring type and paint colors.  CSI failed to timely provide the requested information, and Creative Solutions never gave consent for the proposed renovations.

35.     Nevertheless, CSI's subtenant proceeded to renovate the Premises, altering the Premises by demolishing walls, removing a large built-in counter, painting, and installing new carpet.

BILLBROUGH & MARKS, P.A.

100 ALMERIA AVENUE · SUITE 320 · CORAL GABLES, FLORIDA 33134 · TELEPHONE 305.442.2701 · FAX 305.442.2801

36.     Creative Solutions sent CSI notice of its breach of the Lease Agreement on October 27, 2020.  To date, CSI has failed to restore the Premises to its original condition.

**V.     Announced Acquisition of Intalere, Inc.**

37.     Plaintiffs bring this matter seeking compensation for Defendants' breaches of the Employment Agreement, Asset Purchase Agreement, Promissory Note, and Lease Agreement. Defendants remain liable for their obligations under these contracts.

38.     Upon information and belief, Vizient, Inc. is in the process of acquiring Intalere, Inc. and, presumably, its wholly owned subsidiary CSI Specialty Group, LLC.

39.     Under Florida law, when a merger occurs "all debts, obligations, and other liabilities of each merging entity are debts obligations, and other liabilities of the surviving entity." Fla. Stat. § 605.1026(1)(d); *see also* Fla. Stat. § 607.1114(3-4) (When a business is converted, the new entity "shall continue to be responsible and liable for all the liabilities and obligations of the converting domestic corporation. … Any claim existing or action or proceeding pending by or against any domestic corporation that is converted into another business entity may be continued as if the conversion did not occur. If the converted entity is a foreign entity, it shall be deemed to have consented to the jurisdiction of the courts of this state to enforce any obligation.")

40.     Following its merger with Defendants, if any, Vizient, Inc. shall be liable for Defendants' breaches of the Employment Agreement, Asset Purchase Agreement, Promissory Note, and Lease Agreement.

<u>**COUNT I: BREACH OF CONTRACT**</u>

**Breach of Employment Agreement:  Base Salary**

41.     DiMascio realleges and incorporates by reference Paragraphs 1 through 27 and 37 through 40 as though fully set forth herein.

10

42.     The Employment Agreement entered into between Intalere and DiMascio is a valid and enforceable contract supported by valid consideration.

43.     Among other obligations under the Employment Agreement, during the period of her employment with Intalere, DiMascio was to administer ongoing corporate activities and business, and to perform other duties which were assigned to her, from time to time.

44.     DiMascio fully performed her contractual obligations to Intalere under the Employment Agreement.

45.     Intalere breached the Employment Agreement by significantly reducing DiMascio's job authority and responsibility by, among other things, stripping DiMascio of her title of President of CSI, withdrawing DiMascio's supervisory authority over 25 subordinate employees who previously reported directly to her, and significantly reducing her assigned job duties, without DiMascio's consent.

46.     DiMascio complied with the terms of the Employment Agreement by providing Intalere the Preliminary Notice of Good Reason for her resignation and a thirty (30) day opportunity to cure.

47.     When Intalere failed to remedy the defects outlined in DiMascio's Preliminary Notice of Good Reason, DiMascio had Good Reason to resign her employment with Intalere and terminate the Employment Agreement.

48.     Pursuant to the Employment Agreement, Intalere is required to pay DiMascio her base salary at the time of termination for the remainder of the term of the Employment Agreement, an amount equal to Eight Hundred Sixty-Four Thousand Seven Hundred Seventy Dollars and

11

83/100 ($864,770.83).  Despite multiple demands, Intalere has failed and refused to pay DiMascio the amounts owed pursuant to the Employment Agreement.

49.     DiMascio has satisfied all prerequisites to filing suit for breach of the Employment Agreement, including by attending an in-person meeting with Heil, attending a second in-person meeting with Intalere and counsel for all parties, and attending a pre-suit mediation conference with Intalere and counsel for all parties.

50.     Intalere's breach of the Employment Agreement has damaged DiMascio in the amount of Eight Hundred Sixty-Four Thousand Seven Hundred Seventy Dollars and 83/100 ($864,770.83), for the remainder of her base salary through the contract term.

Wherefore, DiMascio demands judgment against Intalere for damages and pre and post judgment interest and such other relief that the Court deems appropriate.

## COUNT II: BREACH OF CONTRACT

### Breach of Asset Purchase Agreement:  Earn-Out Payment

51.     Career Solutions realleges and incorporates by reference Paragraphs 1 through 27 and 37 through 40 as though fully set forth herein.

52.     The Asset Purchase Agreement entered into between CSI and Career Solutions is a valid and enforceable contract supported by valid consideration.

53.     Under the Asset Purchase Agreement, for each 12-month period ending December 31, 2018; December 31, 2019; December 31, 2020; and December 31, 2021, CSI was required to pay Career Solutions an installment of the Earn-Out Payment.  For the 12-month period ending December 31, 2019, the earn-out amount was calculated as 26% of the Revenue Growth of CSI during the preceding 12-month period.

12

54.     According to Section 3.3.5 of the Asset Purchase Agreement, following DiMascio's termination of the Employment Agreement for Good Reason, Intalere was required to pay Career Solutions "a pro-rated portion of the Earn-Out Payment for the 12-month period in which such termination occurs based on the year-to-date results. . . ."

55.     DiMascio properly terminated the Employment Agreement for Good Reason.

56.     Career Solutions is, therefore, entitled to a pro-rated portion of the Earn-Out Payment for 2019.   Upon information and belief, CSI's revenue growth during 2019 was approximately Seven Hundred Sixty-Nine Thousand Two Hundred Thirty Dollars and 00/100 ($769,230.00).   Intalere was, therefore, required to pay Career Solutions Two Hundred Thousand Dollars and 00/100 ($200,000.00), or 26% of CSI's 2019 revenue growth.

57.     CSI violated Section 3.3.5 of the Asset Purchase Agreement by refusing to pay Career Solutions the 2019 Earn-Out Payment.

58.     Career Solutions has been damaged in the amount of Two Hundred Thousand Dollars and 00/100 ($200,000.00) by Intalere's failure to pay the 2019 Earn-Out Payment.

Wherefore, Career Solutions demands judgment against Intalere for damages and pre and post judgment interest and such other relief that the Court deems appropriate.

## COUNT III: BREACH OF CONTRACT

### Breach of Promissory Note:  Principal, Interest, and Attorneys' Fees

59.     Career Solutions realleges and incorporates by reference Paragraphs 1 through 27 and 37 through 40 as though fully set forth herein.

60.     The Promissory Note entered into between CSI and Career Solutions is a valid and enforceable agreement supported by valid consideration.

BILLBROUGH & MARKS, P.A.

100 ALMERIA AVENUE · SUITE 320 · CORAL GABLES, FLORIDA  33134 · TELEPHONE 305.442.2701 · FAX 305.442.2801

61.     Among other obligations under the Note, CSI promised to pay Career Solutions the principal sum of One Million Five Hundred Thousand Dollars and 00/100 ($1,500,000.00) in twenty-four (24) monthly installments of principal and interest of Sixty-Three Thousand Three Hundred Forty-Four Dollars and 82/100 ($63,344.82).

62.     CSI made all required payments through May 1, 2019.  The outstanding balance of the Note after the May 1, 2019 payment was Five Hundred Sixty-Seven Thousand Forty-Five Dollars and 75/100 ($567,045.75).  CSI failed and refused to make the June 1, 2019 Note payment. Interest of one and three tenths percent (1.3%) accrued on the outstanding balance of the Note from May 1, 2019 through June 1, 2019.  The interest accrued for this period was Six Hundred Ten Dollars and 67/100 ($610.67).  The total outstanding amount of the Note as of June 1, 2019 was Five Hundred Sixty-Seven Thousand Six Hundred Fifty-Six Dollars and 42/100 ($567,656.42), including the principal and accrued interest.

63.     Career Solutions sent notice to CSI regarding CSI's failure to make the June 1, 2019 Note payment, as required.  CSI's failure to make the installment payment within five (5) business days of Career Solutions providing written notice of the delinquent payment constitutes an event of default under the Note.

64.     CSI defaulted on the Note on June 13, 2019.  Pursuant to the Note, in the event of default, interest accrues at the rate of ten percent (10%) per annum on any remaining amounts owed.

65.     In addition, Career Solutions has been required to retain counsel to assist in the collection and enforcement of the Note.  Pursuant to Paragraph 5 of the Note, if the Note is given

14

to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, CSI is required to pay all attorneys' fees and costs incurred by Career Solutions in enforcing the Note.

66.     Career Solutions has been damaged in the amount of Five Hundred Sixty-Seven Thousand Six Hundred Fifty-Six Dollars and 42/100 ($567,656.42) plus pre and post judgment interest.

Wherefore, Career Solutions demands judgment against CSI for damages, pre and post judgment interest, attorney's fees, and such other relief that the Court deems appropriate.

## COUNT IV: BREACH OF CONTRACT

### Breach of Employment Agreement: 2018 Year-End Bonus

67.     DiMascio realleges and incorporates by reference Paragraphs 1 through 27 and 37 through 40 as though fully set forth herein.

68.     The Employment Agreement entered into between Intalere and DiMascio is a valid and enforceable contract supported by valid consideration.  DiMascio fully performed her contractual obligations in the Employment Agreement.

69.     Pursuant to the Employment Agreement, DiMascio was eligible to participate in the CSI Incentive Plan commensurate with her position.  According to the "2018 Bonus Structure – Consulting Division" document for all CSI employees, all non-sales members of CSI were eligible to participate in the Company Bonus Program.  An employee's bonus percentage is based on the title of the employee.  Senior and Executive Vice Presidents were eligible to receive thirty percent (30%) of their 2018 annual salary.  DiMascio's 2018 base salary was Three Hundred Twenty-Five Thousand Dollars and 00/100 ($325,000.00).

70.     Under Intalere's "2018 Bonus Structure – Consulting Division" document, employee bonuses were to be paid quarterly "on or about 45 days after close of quarter, dependent

15

on payroll schedule."  However, Heil set DiMascio's bonus payout on an annual basis, making DiMascio's 2018 bonus due forty-five (45) days after the close of 2018.

71.     On several occasions during the first quarter of 2019, Intalere acknowledged it owed DiMascio the bonus she earned in 2018.  On or about March 14, 2019, Intalere, by and through its Chief Financial Officer, Steve Schoch, informed DiMascio Intalere would try to process her 2018 bonus the next day.  On March 22, 2019, Intalere, again by and through Steve Schoch, confirmed to DiMascio in writing that her 2018 bonus would be processed the same day.

72.     However, on April 22, 2019, following Intalere's receipt of DiMascio's Preliminary Notice of Good Reason, Intalere claimed for the first time that DiMascio's 2018 bonus was "still pending final approval."

73.     DiMascio has demanded payment of her 2018 bonus on multiple occasions.  To date, however, Intalere has failed and refused to pay DiMascio her 2018 bonus.

74.     Intalere has breached the Employment Agreement by refusing to pay DiMascio her 2018 bonus.  DiMascio is entitled to Ninety-Seven Thousand Five Hundred Dollars and 00/100 ($97,500.00) for her 2018 bonus.

75.     DiMascio has been damaged in the amount of Ninety-Seven Thousand Five Hundred Dollars and 00/100 ($97,500.00), the amount of her 2018 bonus.

Wherefore, DiMascio demands judgment against Intalere for damages, pre and post judgment interest, and such other relief that the Court deems appropriate.

Billbrough & Marks, P.A.

100 Almeria Avenue · Suite 320 · Coral Gables, Florida 33134 · Telephone 305.442.2701 · Fax 305.442.2801

## COUNT V: BREACH OF CONTRACT

### Breach of Employee Handbook: Payment of Accrued Vacation Time

76.     DiMascio realleges and incorporates by reference Paragraphs 1 through 27 and 37 through 40 as though fully set forth herein. The Employment Agreement entered into between Intalere and DiMascio is a valid and enforceable contract supported by valid consideration.

77.     As an employee of Intalere, DiMascio was eligible for vacation, holidays, and other fringe benefits.  According to the Employment Agreement, DiMascio was eligible for twenty (20) days of vacation each year plus four (4) additional days per calendar year. Upon information and belief, DiMascio's existing vacation rolled over from year to year.

78.     Intalere's Employee Handbook states in relevant part, "[a]ccrued, unused vacation time will be paid out at termination."  A true and correct copy of excerpts from Intalere's Employee Handbook are attached hereto as **Exhibit 5** and incorporated herein by reference.

79.     At the time of her resignation, DiMascio had two hundred ninety-six (296) hours of accrued but unused vacation time.  DiMascio's unused vacation time is equivalent to Forty-Seven Thousand Six Hundred Thirty-Eight Dollars and 24/100 ($47,638.24).

80.     Despite multiple demands for payment, Intalere has failed and refused to compensate DiMascio for her accrued vacation time, as requested by Intalere's Employee Handbook.

81.     DiMascio has been damaged in the amount of Forty-Seven Thousand Six Hundred Thirty-Eight Dollars and 24/100 ($47,638.24) for accrued vacation time.

Wherefore, DiMascio demands judgment against Intalere for damages and pre and post judgment interest and such other relief that the Court deems appropriate.

BILLBROUGH & MARKS, P.A.

100 ALMERIA AVENUE · SUITE 320 · CORAL GABLES, FLORIDA  33134 · TELEPHONE 305.442.2701 · FAX 305.442.2801

## COUNT VI: BREACH OF CONTRACT

### Breach of Lease Agreement: Unauthorized Renovations

82.     Creative Solutions realleges and incorporates by reference Paragraphs 1 through 8 and 28 through 40 as though fully set forth herein.

83.     The Lease Agreement entered into between CSI and Creative Solutions is a valid and enforceable contract supported by valid consideration.

84.     Creative Solutions has performed all its duties under the Lease Agreement.

85.     As detailed above, CSI remains fully liable for any sublease of the Lease Agreement and has not been released from performing any of the terms, agreements, and conditions of the Lease Agreement.  The Lease Agreement permits alterations and improvements to the Premises only following consent of Creative Solutions.

86.     CSI's subtenant, breached the Lease Agreement by making substantial changes to the Premises without Creative Solutions' approval.  Pursuant to the terms of the Lease Agreement, CSI fully liable for its subtenant's breach of the Lease Agreement.

87.     Creative Solutions seeks the total rent payable for the remainder of the Lease Agreement for any portions that exceed the reasonably estimated fair value of the Premises.

Wherefore, Creative Solutions demands judgment against CSI for damages and such other relief that the Court deems appropriate.

## COUNT VII: WAGE CLAIM

### Recovery of Accrued Vacation Time and Unpaid Bonus

88.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 8, 41 through 50, and 67 through 75 as though fully set forth herein.

18

89.     DiMascio was an employee of Intalere.  DiMascio performed work for Intalere for which she was promised wages.  More specifically, Intalere promised DiMascio the payment of wages pursuant to the Employment Agreement and Intalere's Employee Handbook.

90.     As more specifically set forth above, Intalere promised DiMascio payment of her 2018 year-end bonus in writing on multiple occasions.  DiMascio worked numerous hours for Intalere but did not receive the compensation promised by Intalere in the form of her 2018 year-end bonus.

91.     Intalere also promised DiMascio payment for accrued but unused vacation time upon the termination of employment, as more fully set forth in Intalere's Employee Handbook.

92.     Despite making such promises, Intalere has failed and refused to issue DiMascio payment for her 2018 year-end bonus or accrued but unused vacation time.  Intalere has wrongfully deprived DiMascio of wages to which she is entitled.

93.     Intalere has willfully violated Florida law by failing and refusing to pay DiMascio wages to which she was entitled.  DiMascio has been damaged as a result of Intalere's failure to pay the agreed upon wages to which DiMascio is entitled.

Wherefore, DiMascio demands judgment against Intalere for damages and pre and post judgment interest and such other relief that the Court deems appropriate.

## JURY DEMAND

94.     Plaintiffs hereby assert their right to a trial by jury and make this demand for a jury trial.

19

## PRAYER

**WHEREFORE**, Plaintiffs prays for judgment against Defendants, jointly and severally, as follows:

A.      DiMascio's unpaid base salary for the remaining term of the Employment Agreement in the amount of $864,770.83;

B.      The Prorated Earn-Out Payment pursuant to the Promissory Note in the amount of $200,000.00;

C.      The Principal Amount owed to DiMascio on the Promissory Note in the amount of $567,656.42;

D.      The Default Interest owed on the Promissory Note;

E.      Attorneys' Fees incurred to Enforce the Promissory Note;

F.      DiMascio's 2018 year-end bonus in the amount of $97,500.00;

G.      Compensation for DiMascio's unused vacation in the amount of $47,638.24;

H.      The rental payable for the Premises;

I.      Pre and post judgment interest; and

J.      Any additional relief this Court deems equitable and just.

BILLBROUGH & MARKS, P.A.

100 ALMERIA AVENUE · SUITE 320 · CORAL GABLES, FLORIDA 33134 · TELEPHONE 305.442.2701 · FAX 305.442.2801

Respectfully submitted,

Geoffrey B. Marks
Fla. Bar No.714860
BILLBROUGH & MARKS, P.A.
100 Almeria Avenue, Suite 320
Coral Gables, Florida 33134
(305) 442-2701 Telephone
(305) 442-2801 Facsimile
gmarks@attyfla.com Email


By:     /s/ *Geoffrey B. Marks*
        Geoffrey B. Marks

and

Allison L. Davis
Texas State Bar No. 24058474
adavis@bf-law.com
Tyler DiMarino
Texas State Bar No. 24086736
tdimarino@bf-law.com
BROWN & FORTUNATO, P.C.
905 S. Fillmore Street, Suite 400
P. O. Box 9418
Amarillo, Texas 79105-9418
(806) 345-6300 Telephone
(806) 345-6863 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

21